IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| WILLIE T. EDMONDSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action File No. |
| | : | |
| v. | : | _____ |
| | : | |
| CARRIAGE SERVICES, INC. | : | |
| and CARRIAGE FUNERAL | : | **JURY TRIAL DEMANDED** |
| HOLDINGS, INC., | : | |
| | : | |
| Defendants. | | |

## <u>COMPLAINT</u>

Plaintiff Willie T. Edmondson ("Mr. Edmondson") brings this Complaint against Defendants Carriage Services, Inc. ("Carriage Services") and Carriage Funeral Holdings, Inc. ("Carriage Funeral Holdings") (collectively "Carriage"), showing as follows:

### <u>STATEMENT OF CLAIMS, JURISDICTION, AND VENUE</u>

1.

This is a civil action for unlawful race-based discrimination based on the refusal of Carriage to consummate a contract for the sale of a funeral home to an African American in violation of 42 U.S.C. § 1981 ("Section 1981").

2.

This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331 and § 1343.

3.

Venue is proper in this division of the Court pursuant to 28 U.S.C. § 1391, because the alleged violations of Mr. Edmondson's civil rights were committed in this judicial district and division, and Carriage transacts business within this judicial district and division.

**PARTIES**

4.

Mr. Edmondson is an African American citizen and resident of LaGrange, Georgia, and submits himself to the jurisdiction of this Court.

5.

Carriage Services, Inc. is a Delaware corporation with its principal place of business in Texas.  Carriage Services, Inc. owns and operates funeral homes and transacts business within the State of Georgia and is subject to the jurisdiction of this Court. It can be served with a copy of the summons and Complaint through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6.

Carriage Funeral Holdings, Inc. is a Delaware corporation with its principal place of business in Texas. Carriage Funeral Holdings, Inc. is licensed and authorized to transact business within the State of Georgia and is subject to the jurisdiction of this Court. It can be served with a copy of the summons and Complaint through its registered agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

7.

Mr. Edmondson is a lifelong resident of LaGrange, Georgia. He is a well-respected community leader, who has served on the City Council for the past nineteen (19) years.

8.

In 1974, Mr. Edmondson began an apprenticeship in the funeral business. He began working in the funeral business in an official capacity in 1979. Since that time, Mr. Edmondson has worked diligently to build his reputation and business within the funeral services industry. Mr. Edmondson is a member of the Georgia Funeral Service Practitioners Association, Inc. ("GFSPA") and has served in various roles over the years. He currently serves as Treasurer for 5th District of the

GFSPA and as First Vice President at the state level of GFSPA. Mr. Edmondson was also appointed Chairman of the Georgia State Board of Funeral Services.

9.

After over twenty (20) years of working diligently to achieve his dream of becoming an owner of a funeral home, Mr. Edmondson purchased Lakes-Dunson-Robertson Funeral Home in LaGrange, Georgia, on November 11, 2002. He has operated this funeral home serving the LaGrange and Troup County, Georgia area continuously since that date.

10.

In October of 2015, The Georgia Department of Transportation ("DOT") notified Mr. Edmondson that the DOT was acquiring the land the Lakes-Dunson-Robertson Funeral Home was sited on via eminent domain for the public purpose of expanding the highway system.

11.

As a result of the eminent domain action against his funeral home, Mr. Edmondson sought to acquire an existing funeral home in or around LaGrange, Georgia so he could continue to operate his business.

12.

During his search for a new location, Mr. Edmondson learned that Carriage

was offering to sell the Hunter-Allen-Myhand Funeral Home ("Myhand Funeral Home") that the company owned and operated in LaGrange, Georgia. In April 2017, Mr. Edmondson entered into negotiations with Jake Johnson, the designated representative of Carriage, regarding a potential acquisition of the Myhand Funeral Home.

13.

Mr. Edmondson negotiated exclusively with Mr. Johnson from Carriage. All negotiations between Mr. Edmondson and Mr. Johnson were done by correspondence, email, or telephone.

14.

The negotiations resulted in an agreement acceptable to all parties whereby Mr. Edmondson would purchase the Myhand Funeral Home for $525,000. On May 22, 2018, Mr. Johnson emailed Mr. Edmondson the Asset Purchase Agreement for signature. A true and accurate copy of the Asset Purchase Agreement is attached hereto as **Exhibit A**.

15.

Mr. Edmondson had already secured financing to complete the purchase of the Myhand Funeral Home, and was prepared to close the rate.

16.

In reviewing the Asset Purchase Agreement, Mr. Edmondson noted that Carriage included as an asset all "Pre-Need Contracts" owned by the Myhand Funeral Home. "Pre-Need Contracts" are pre-purchased funeral and burial contracts customers acquire to secure future funeral and burial services.

17.

During a phone call with Mr. Johnson during the week of May 20th, 2018, Mr. Edmondson noted the provision containing the pre-need contracts, as he initially believed he was only purchasing the real property, building, vehicles, and inventory.

18.

Mr. Edmondson, who communicated with Mr. Johnson exclusively by phone, mail, or email, disclosed to Mr. Johnson the fact he was African American by stating, "Now you realize I'm not a white firm." He further noted that "some customers who had purchased pre-need contracts may have an issue with an African American owned funeral home handling their burials."

19.

In response to Mr. Edmondson's inquiry about his race, Mr. Johnson was clearly surprised and stated "Oh really?" Mr. Johnson then quickly ended the

telephone conversation. This was the last conversation between Mr. Edmondson and Mr. Johnson or any other representative of Carriage.

20.

Mr. Edmondson remained prepared to move forward with the purchase of the Myhand Funeral Home and was agreeable to refunding any deposits on pre-need contracts should a customer request a refund.

21.

Mr. Edmondson heard nothing further from Carriage until May 31, 2018 when Mr. Johnson emailed Mr. Edmondson the following notice that Carriage was refusing to close the sale of Myhand Funeral Home:

> We've had some lengthy discussions this week internally, and I regret to inform you that we are withdrawing our intent to sell the building/business. The decision has been made above me that we will continue to operate the business for the foreseeable future. I must apologize, as there was every intention to sell to you until I was given the news this morning.

A true and accurate copy of quoted email is attached hereto as **Exhibit B**.

22.

Carriage subsequently sold the Myhand Funeral Home to Jeff Higgins, a Caucasian male who operated a white funeral home in LaGrange, Georgia.

23.

In August 2019, Mr. Higgins visited Mr. Edmondson at his funeral home

and told him that he was acquiring the Myhand Funeral Home. He knew Mr. Edmondson needed another location for his funeral home and offered to sell his existing funeral home for $800,000.

24.

Upon information and belief, Carriage relies on Managing Partners to manage their various facilities. Based on currently available information, Carriage has only hired one African American Managing Partner in its long history.

25.

According to Defendant's website, the Managing Partners "entrepreneurially make local operating decisions in order to highly achieve their Standards and best compete in their individual markets."

26.

Based on currently available information, Carriage has never purchased an African-American-owned facility, nor has it ever sold a facility to an African American.

27.

Upon information and belief, Carriage does not have any African Americans serving in an executive position or on the Board of Directors, despite being a publicly traded company. Attached as **Exhibit C** are screenshots of Carriage's

leadership team as of the date of filing this Complaint.

28.

Carriage made the decision to renege on the Asset Purchase Agreement with Mr. Edmondson after he disclosed that he was African American, coupled with his expressed intent to operate the acquired funeral home predominantly to serve the African-American community in the LaGrange area.

29.

The death-care industry, both in Georgia and throughout the South, is highly segregated by race. The Georgia Funeral Directors Association ("GFDA"), founded in 1899, has never had an African-American president. All current Executive Committee members and the District Chairperson are Caucasian.

30.

The GFDA is the designated state liaison with the National Funeral Directors Association ("NFDA"). According to the NFDA's website, it is the "world's leading and largest funeral service association." Founded in the mid-1880s, it has never had an African American president. The Board of the NFDA and its staff, as pictured on the NFDA's website, are all Caucasian.

31.

The vast majority of the Defendant's managing partners who work in the

South are members of the NFDA.

32.

Since they were excluded from the NFDA and GFDA based on their race, African American funeral home directors formed the Georgia Funeral Service Practitioners Association ("GFSPA"), a separate trade organization made up of African American  funeral home directors and owners. GFSPA was founded in 1959.

33.

The GFSPA is a chartered statewide association of the National Funeral Directors & Morticians Association ("NFDMA"), the national association for African American funeral home directors and owners.

34.

Upon information and belief, none of the Defendant's managing partners are members of the GFSPA or NFDMA.

## COUNT I: RACIAL DISCRIMINATION

## IN VIOLATION OF 42 U.S.C. § 1981

35.

Mr. Edmondson incorporates all of the foregoing allegations and numbered paragraphs as if fully restated herein.

36.

42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts.

37.

Carriage offered to sell the Myhand Funeral Home to Mr. Edmondson.

38.

Carriage only backed out of selling the Myhand Funeral Home to Mr. Edmondson after learning that he was African American.

39.

Carriage elected not to move forward with contracting with Mr. Edmondson due to his race and color, African American, in violation of 42 U.S.C. § 1981.

40.

As a result of Carriage's discriminatory actions, Mr. Edmondson suffered financial harm through the lost opportunity to purchase the Myhand Funeral Home from Carriage.

41.

Carriage's actions also caused Mr. Edmondson to suffer other monetary and non-monetary damages, the amount of which shall be determined at trial.

42.

Carriage's discriminatory conduct was willful and intentional, with reckless indifference to Mr. Edmondson's federally protected rights.

43.

Mr. Edmondson is entitled to economic damages, compensatory damages, punitive damages, and attorneys' fees and costs in an amount to be proven at trial.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that the Court:

1) Order a jury trial on all issues so triable;

2) Enter judgment against Defendants on all Counts herein;

3) Award Plaintiff compensatory and punitive damages against Defendants;

4) Award Plaintiff full economic damages incurred as a result of Defendants discriminatory acts;

5) Award pre- and post-judgment interest at the maximum rates allowable by law;

6) Award Plaintiff his reasonable attorneys' fees and litigation costs; and

7) Award such other relief as the Court deems just and proper.

*Signature on the following page.*

Submitted this 30th day of October 2019.

/s/ A. Lee Parks, Jr.
**A. Lee Parks, Jr.**
Georgia Bar No. 563750
Email: lparks@pcwlawfirm.com

**PARKS, CHESIN & WALBERT, P.C.**  **J. Daniel Cole**
75 Fourteenth Street, 26th Floor    Georgia Bar No. 450675
Atlanta, GA 30309    Email: dcole@pcwlawfirm.com
Telephone: 404-873-8000
Facsimile:  404-873-8050
*Counsel for Plaintiff*